UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| In re | Chapter 7 |
| | Involuntary |
| YOGA SMOGA, INC., | |
| | Case No. 16-13159 (MEW) |
| Alleged Debtor. | |

---

# BENCH DECISION REGARDING ALLEGED DEBTOR'S MOTION TO DISMISS INVOLUNTARY PETITION

We are here in the case of Yoga Smoga, Inc. An involuntary petition has been filed, and the alleged debtor has moved to dismiss. I will dictate my decision on the motion to dismiss today, and I will ask the petitioning creditors to obtain a transcript of this proceeding. I will use that transcript as the basis for a more formal written opinion in which I will clean up case citations and other inevitable misstatements I may make as I explain my rulings. It will be that formal written opinion that will constitute my bench decision on the motion.

The involuntary petition in this case is now supported by eight parties: Durga Capital LLC; The Ravi Singh 2015 Family Trust; Jon Thomas Moore; Ryan James Moore; Jeffrey Stevens Moore; Lori Lynne Walsh; Sean Gallagher, who was not part of the initial group but who moved to join on December 12, 2016; and 99Degrees Custom, Inc., which also was not part of the initial group but which moved to join the petition on December 16, 2016. I will loosely refer to Jon Thomas Moore, Ryan James Moore, Jeffrey Stevens Moore and Lori Lynne Walsh as the Moore Group for purposes of my ruling today.

The debtor has moved to dismiss. The debtor has not officially made a contention as to the claims of 99Degrees Custom, Inc., which only filed its joinder on December 16th. The debtor acknowledges that 99Degrees Custom, Inc. is a legitimate creditor, but it is not entirely

16-13159-mew    Doc 40    Filed 12/27/16    Entered 12/27/16 11:24:35    Main Document
Pg 2 of 12

clear to me whether there is any dispute as to the amount owed to that creditor. The debtor does contend, though, that the other petitioning creditors' debts are subject to bona fide dispute as to liability and/or amount. To a very large extent, these contentions are based on arguments that the petitioning creditors are not owed debts, but instead, are persons who made equity contributions.

Some comments on the legal issues are appropriate before getting to the individual arrangements and the issues in this particular case.

The parties appear to agree that there are enough creditors so that an involuntary case cannot be commenced by a single creditor, and instead, that at least three creditors must join in an involuntary petition. Section 303(b)(1) of the Bankruptcy Code, as it applies to this case, requires that a voluntary petition be filed or joined by three or more creditors, each of which holds a claim that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount. 11 U.S.C. § 303(b)(1).

On the one hand, Section 303(b) reflects the policy view that a disputed claimant – for example, a party to a bitterly contested litigation – should not be allowed to start an involuntary bankruptcy case. *Crest One SpA v. TPG Troy, LLC (In Re: TPG Troy, LLC)*, 793 F.3d. 228, 235 (2nd Cir. 2015) ("An involuntary bankruptcy case cannot be the means of pressuring a debtor to pay a legitimately disputed debt."). Otherwise, it would be too easy to do so out of spite or revenge or just as punishment for a debtor's assertion of good-faith, legitimate defenses to a claim. On the other hand, it is all too easy in our legal system to cook up objections to claims. The requirement of a bona fide dispute means that there must be a legitimate reason to contest a claim, as opposed to just something that a debtor invents in a desperate effort to stave off an involuntary bankruptcy filing.

The parties agree here that under controlling Second Circuit authority, there has to be an objective basis for a factual or a legal dispute over the obligations owed to a petitioning creditor in order for there to be a bona fide dispute. *See*, *e.g.*, *TPG Troy, LLC*, 793 F.3d. at 235.

It is also clear, and the parties have agreed in their submissions to me, that the bankruptcy court can and should do a sufficient analysis of the underlying claims and defenses to determine if a bona fide issue exists. However, if the bankruptcy court finds that there is such a bona fide issue, the court is not expected, and it would not be appropriate, to resolve that issue in the context of the involuntary petition. *See*, *e.g.*, *In re Stillwater Asset Backed Offshore Fund, Ltd.*, 485 B.R. 498, 505 (Bankr. SDNY 2013).

Many of the arguments that underlie the debtor's claims that there are bona fide disputes in this matter are based on a line of cases that consider whether an arrangement between parties should be treated as debt or as equity. Courts often refer to this as the debt recharacterization doctrine. Courts have adopted different ways of looking at this question. Most courts have looked at various multifactor tests. *See*, for example the Sixth Circuit decision in *In re AutoStyle Plastics, Inc.*, 269 F.3d. 726, 749 (6th Cir. 2001). Some other courts have held that it is fine to consider factors, but that the issue cannot be reduced to a single set of questions, and that the factors cannot be given a predetermined weight. Instead, the question is simply whether, as a matter of economic reality, the arrangement is a debt or whether it is equity. *In re SubMicron Systems, Corp.*, 432 F.3d 448, 456 (3rd. Cir. 2006).

In *SubMicron*, the Third Circuit Court of Appeals held that the label "recharacterization" is misleading. The real aim of a court is to identify the true character of an arrangement, not to change it. As to the use of multifactor tests, the Third Circuit observed that "[w]hile these tests undoubtedly include pertinent factors, they devolve to an overarching inquiry: the

3

characterization as debt or equity is a court's attempt to discern whether the parties called an instrument one thing when in fact they intended it as something else." *Id.* at 455-56.

We have found no Second Circuit cases dealing with this issue in the bankruptcy context. And somewhat to my surprise, we have found no Southern District of New York District Court decisions in the bankruptcy context, though there is authority in the bankruptcy court. *See, e.g., In re Adelphia Comm'ns Corp.*, Bankr. No. 02-41729, 2006 WL 687153, at 9-10 (Bankr. S.D.N.Y. March 6, 2006). We have found some Second Circuit authority in the tax context. The leading decision in that context appears to be *Gilbert v. Commissioner*, 262 F.2d 512 (2d Cir. 1959), where the Court of Appeals held that the issue of whether something is debt or equity is a matter of "substantial economic reality."

Arguably, the issue of whether the obligations at issue here are debt or equity should be governed by state law, or New York State law in this case. But the parties have not cited to New York case law, and they seem to agree that the tests cited in the federal court cases are the appropriate ones to apply. At least there has been no suggestion that New York would apply a different rule from those cases.

I should note as an aside that some courts have questioned whether a court even has the power to recharacterize debt. Now, to the extent that what they are questioning is whether a court can impose a different arrangement than the parties actually made, that is probably a valid conclusion. For example, one bankruptcy appellate panel in the Ninth Circuit has held that a bankruptcy court cannot recharacterize debt as equity. *In re Pacific Express*, 60 B.R. 112 (B.A.P. 9th Cir. 1986).

But if debt recharacterization cases are properly viewed as instances in which a court is asked to figure out what the parties actually did, and to look beyond the labels that the parties

4

applied, then I think it is quite ordinary and correct to say that the bankruptcy court does have the power to entertain such a contention. It is quite often the case that courts are asked to look through the form of a transaction and to determine what it really is as a matter of economic substance. For example, bankruptcy courts and other courts often are asked to consider the question of whether a transaction that takes the form of a lease is, in reality, a financing. *See*, *e.g.*, *In re 48th Street Steakhouse, Inc.*, 61 B.R. 182, 190 (Bankr. S.D.N.Y. 1986). The true character of such an arrangement makes a difference, for example, in the application of Section 365 of the Bankruptcy Code, and if real property is involved, in the application of Section 502(b)(6).

The lines between different kinds of transactions can often be thin, and parties often have incentives to dress up an arrangement with one label or characterization, when they really are attempting to do something very different. To the extent the issue is one of determining what the parties actually did and intended to do, that is a proper inquiry for a court to make.

Two cautionary statements are in order, though. First, as I have explained, while it may be quite ordinary for courts to look to economic substance and not merely to form to determine the true relationships of the parties, it is far too often the case that parties use recharacterization arguments to try to change the relationships between the parties. Thus, for example, parties far too often contend that a loan made by an insider should automatically be treated as equity, even if it plainly was never intended as such or documented as such, on the theory that it would be fairer to other creditors to treat it that way.

I agree with the Third Circuit Court of Appeals in the *SubMicron* decision that it is wrong to try to use recharacterization arguments in this way. 432 F.3d at 454-55. It is one thing to examine the terms of a relationship, and the intents of the parties, to identify whether an advance

5

of money actually was a loan or an equity investment at the time it occurred.  It is quite different to suggest that the court, after the fact, can apply a new characterization based on the court's idea of how the arrangement could or should have been structured, or based on the court's idea of what would be fair to other creditors.

The Supreme Court has made clear that nonbankruptcy law governs parties' rights and obligations in the absence of an explicit provision of the Bankruptcy Code to the contrary. *Travelers Casualty & Surety Co. v. Pacific Gas & Electric Co.*, 549 U.S. 443 (2007).  A bankruptcy court may equitably subordinate a claim if the appropriate showings are met.  *See* 11 U.S.C. § 510(c).  Otherwise, though, a bankruptcy court does not have the power to alter the actual arrangement that the parties intended and that they adopted.  Put another way: the court can determine what the arrangement actually is and was intended to be, but it cannot impose a different relationship than the one the parties actually adopted.

Second, courts that have addressed recharacterization arguments have often considered the financial straits of a borrower and asked whether a reasonable third party would have made a loan under the same circumstances.  *AutoStyle Plastics*, 269 F.3d at 750.  Some courts have concluded that if a third party would not have made a loan, then an advance should be treated as equity.  *Id*. at 752. Of all the factors that courts have considered in this context, this is the one that has always made the least sense to me.  The gist of the reasoning is this: if a loan would have been risky because there was too much of a chance that the loan would not be repaid in full, then the lender must really have intended to make an equity contribution, which would be even further down in the capital structure and which would have an even lower chance of ever being recovered.  That reasoning is backwards.  If a company is in dire straits, common sense says that a person who provides additional money is more likely to want it to be considered debt, not

equity, because even if the debt may not be repaid in full, at least it will stand higher in the capital structure. This is true regardless of whether the lender is an insider or an existing equity holder.

The point of considering factors is to identify parties' true intent. In that regard, I think that many parties and some courts have missed the mark in discussing the relevance of the company's financial circumstances in deciding whether an advance was debt or equity.

Turning to the petitioning creditors here, and focusing particularly on the Moore group: the debtor agrees that there are more than three parties in the so-called Moore group. The debtor does not challenge their good faith in joining the petition. The debtor has also made clear that if the Moore parties are qualified to file an involuntary petition, then the debtor will not contest the issue of whether the debtor is generally paying its debts as they come due. If the Moore parties have claims that are not subject to a bona fide dispute, then, there is no reason to consider the other arguments as to the other petitioning creditors.

I have reviewed all of the arguments, the declarations, and the many exhibits that the parties have submitted to determine whether there is a bona fide dispute as to the Moore group's claims. Some facts are clear, and I believe, have been explicitly acknowledged by the debtor this morning. The Moore parties signed term sheets that contemplated that they would make a loan that would be convertible into equity at their option. The Moore parties paid money to the debtor when they signed the term sheets. The term sheets, though, expressly said that they were nonbinding.

The parties anticipated, at the time of the term sheets, that a large investment might be made by Bain. If that had happened, the parties hoped that the Moore parties would have had the option to acquire equity at a very favorable price.

However, the debtor's primary contention is that the parties never reached a binding agreement on terms. The Bain deal failed. The debtors asked that the Moore parties consider alternatives, including an immediate equity investment, but they said no. The debtor contends that the parties never reached a final agreement, but the debtor acknowledges that the structure that was contemplated when the money was paid was a convertible debt structure. The debtor, nevertheless, asks me to treat the money as though it was an equity contribution and not debt.

There are two legal problems with the debtor's argument. First, the gist of the debtor's contention is that the debtor received money while the parties were in discussions but that there never was a final agreement between the parties. *See*, for example, the motion to dismiss at pages 5 through 8. But if the deal failed, so to speak, that does not mean the debtor gets to keep the money. The debtor does not contend that the Moore parties actually intended to make, or that they did make, an equity contribution at the time they paid the money. The internal documents that have been submitted to me show clearly that nobody understood that an equity investment had already been made at the time the Moore group made payments to the debtor.

Even if the debtor is right about the term sheet and whether it can be enforced, and even if the debtor is right that there is no enforceable agreement between the parties, that just means that the debtor has received money that it has no right to keep. This is a plain instance for the application of the well-established doctrines of unjust enrichment and restitution. *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1110 (N.Y. 2011). Those doctrines apply whenever it is against equity and good conscience to permit a defendant to retain what is sought to be recovered. If, as is the contention here, the debtor received money but never acquired a legal right to keep that money, that simply means that the Moore claimants have plainly valid creditor claims to restitution of the money that they paid to the debtor.

8

Second, for the reasons explained above, I cannot impose an equity investment on the Moore parties when the debtors acknowledge that the Moore parties did not actually agree to make one at the time they made their payments.

The gist of the debtor's argument is that the parties expected the Bain transaction to close; that they hoped that it would create a situation in which an equity conversion would be very profitable to the Moore group; and that the ultimate goal was to try to reach that state of affairs. However, the possibility of a future conversion to equity if a Bain deal had occurred does not mean that the money was contributed as equity at the outset. The debtor acknowledges that the parties did not think of the initial payments that way. The intent, whether fulfilled or not, was to have a debt that would be convertible at the option of the Moore parties. The debtor continues to recognize the obligations as debt in its own records, acknowledges that doing so is the appropriate treatment for accounting purposes, and acknowledges that no actual conversion to equity ever occurred.

The term sheets, whether they are legally binding or not, still are the best evidence of what the parties actually contemplated at the time, and they make clear that the parties contemplated debt. They describe the contemplated deal as a note financing. They describe the hope that the company would issue notes in exchange for the "amounts loaned by" the lenders, which would be due and payable on October 31, 2016, or if earlier, upon completion of the next equity financing. The term sheets state that the loans would bear a six percent interest rate; that they would be convertible "at the option of each lender" into equity; and that they would be made pursuant to a note purchase agreement.

As I noted above, the term sheets make clear that the parties are not bound and that they could propose different terms or could terminate discussions. But in asking me to treat the

9

money paid here as equity, the debtors are not so much making a request that I find that the arrangement actually was an equity investment at the time it was made, so much as asking me to impose such an obligation, even though that is not what actually happened and is not what the parties actually intended at the time. That is not a proper use of the so-called recharacterization doctrine. Properly reviewed, recharacterization means correcting the label, not imposing a new deal.

The debtor has listed various factors from the *AutoStyle Plastics* case that it suggests are relevant, but oddly enough, the motion to dismiss cites to these factors, but then does not really rely on them. The debtor instead makes different arguments that are really not tied to those factors. One argument is that there are some documents in which the Moore investors refer to the monies they paid as investments. Those are very loose characterizations that surely do not control the question of whether these payments were debt or equity. Notably, one of the cited exhibits that refers to Jim Moore as an investor also asks that the "bridge loan" documents be sent to him for that investment. The loose characterization of the money as investments cannot override the clear statements and admissions as to what the parties actually contemplated at the time.

It has also been argued by the debtor that other similarly situated parties have not demanded their money back. I am not certain what conclusion I am supposed to draw from that. Maybe those parties still hold out hope that some other deal will occur; maybe they have agreed to forebear for other reasons. I am not inclined to conclude, simply from their inaction, that they think that a term sheet that contemplated debt was actually equity.

There is also an argument that some other investors were negotiating term sheets that would have contemplated an automatic conversion to equity. I do not think this is relevant in

measuring what the Moore group did.  The Moore parties, admittedly, did not contemplate such an automatic conversion.

The debtor argues that the Moore group could not have expected to be repaid if the Bain deal failed to close.  I do not see how that makes sense as a factor in considering what the parties actually did here.  The debtor contends that this deal was done in the hope that the Bain deal had a chance of closing.  But the term sheet itself recognized at least the possibility that would not happen, and it provided that the money obtained from the Moore group would be treated as debt unless it was converted to equity at the option of the Moore parties.  It seems to me that if there was a chance that the Bain deal would not happen, that supports the intent to treat this obligation as debt because the equity would not be worth very much if the Bain deal did not happen.

In any event, arguments about what the parties hoped to do if the Bain deal had closed are really arguments about what the arrangements with the Moore group might have become if the world had been a different place.  Those arguments cannot overcome the admissions that an equity contribution was not actually intended or accomplished when the money was paid.

There is also an argument in the debtor's papers that the payment should be treated as capital because interest at six percent would have been nominal due to the short duration of time, whereas equity if the Bain transaction had closed would have provided a huge benefit.  Again, this argument asks me to make a ruling based on whether a conversion option would have been exercised if Bain had made the investment that it decided not to make.  In deciding what the existing obligation is, though, it makes no sense to talk about what someone might have voluntarily converted it into if the company's financial circumstances were totally different from what they have turned out to be.

11

I had been prepared to go through the *AutoStyle* factors, but since they have not really been invoked, I do not really think I need to do so. My job is to determine if there is a bona fide dispute as to whether the obligations – or the payments by the Moore parties – were debt or equity. In reviewing that issue, as I have said, the job of the Court is to determine what the arrangement is, and not what the debtor wishes it could be turned into.

In this case, either there was no deal at all, in which case the money has to be repaid for the reasons I have stated, or there was an agreement that it would be debt that could only be converted to equity at the option of the lenders. The one thing that is clear is that there is no basis for saying that it was intended to be treated as equity from day one. I therefore find that there is no bona fide dispute as to the claims of the Moore group. There are at least three qualifying petition creditors in that group, and so the motion to dismiss is denied.

The debtor waives any right or intent to contest whether it is generally paying its debts as they come due. I do not believe it is appropriate, under the circumstances, to delay any further any entry of an order for relief, and the Court will enter an order for relief today.

Dated: New York, New York
         December 19, 2016

                                            s/Michael E. Wiles
                                            UNITED STATES BANKRUPTCY JUDGE